Benjamin I. Rubinstein
Benjamin.Rubinstein@klgates.com
Molly K. Moran
Molly.Moran@klgates.com
K&L Gates LLP
One Newark Center, 10th Fl.
Newark, NJ 07102
P: 973-848-4000
F: 973-848-4001

*Attorneys for Plaintiffs*
*AVENTISUB LLC, CHATTEM, INC.,*
*and SANOFI-AVENTIS US LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AVENTISUB LLC, CHATTEM, INC., and SANOFI-AVENTIS US LLC, ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. |
| v. ) ) | |
| CONSENSUS HOLDINGS LLC ) ) | |
| Defendant. ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

## JURY DEMAND

Plaintiffs Aventisub LLC, Chattem, Inc., and Sanofi-Aventis US LLC (collectively "Sanofi") by and through its undersigned counsel, complains of Defendant Consensus Holdings LLC's ("Defendant") misconduct and alleges as follows:

## NATURE OF ACTION

1.    This case seeks to hold Defendant accountable for infringement and counterfeiting, and related unfair competition arising from Defendant's sale of counterfeit Allegra products

("Allegra Products"). Sanofi seeks injunctive and monetary relief for Defendant's willful acts under the Lanham Act, 15 U.S.C. § 1051, *et seq*., as well as related state law claims arising from Defendant's infringing conduct.

2.     As set forth in detail below, Sanofi has uncovered Defendant's willful infringement, involving the sale of counterfeit Allegra Products to consumers through online commerce sites.

3.     Defendant's conduct has produced and, unless enjoined by this Court, will continue to produce, a likelihood of confusion and deception amongst consumers of Allegra Products, to the irreparable injury of Sanofi and its customers.

4.     As a result of Defendant's actions, allergy patients are placed in harm's way. Accordingly, this action seeks permanent injunctive relief and damages for Defendant's trademark infringement, false designation of origin, and unfair competition.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States.

6.     Defendant is subject to personal jurisdiction in this forum because it is a New Jersey limited liability company; because Defendant is physically located in the state of New Jersey and sells products within the United States, the State of New Jersey, and this District; because Defendant misrepresented the nature of products to residents of the United States, the State of New Jersey, and this District; because Defendant has caused injury to Plaintiffs in the United States, the State of New Jersey, and this District; because Defendant practices the unlawful conduct complained of herein, in part, within the United States, the State of New Jersey, and this District;

and because Defendant regularly conducts or solicits business within the United States, the State of New Jersey, and this District.

7.    Venue is proper in this judicial district under 28 U.S.C. § 1391.

## PARTIES

8.    Plaintiff Aventisub LLC d/b/a Sanofi is a Delaware limited liability company with a principal place of business at 55 Corporate Drive, Bridgewater, NJ 08807.

9.    Plaintiff Chattem, Inc is a Tennessee corporation with a principal place of business at 55 Corporate Drive, Bridgewater, NJ 08807.

10.    Plaintiff Sanofi-Aventis US LLC is a Delaware limited liability company with a principal place of business at 55 Corporate Drive, Bridgewater, NJ 08807.

11.    Defendant Consensus Holdings LLC, d/b/a Amazon Seller Consensus Holdings, is a New Jersey limited liability company with a principal place of business in Bergen County, New Jersey.  It sells products, including those at issue in this lawsuit, via various internet platforms.  Its most prominent storefront is through its Amazon.com account named "Consensus Holdings."

12.    Amazon.com has assigned Defendant's Consensus Holdings storefront user ID ATWWOXPMRKSFC.

## FACTS

### *Sanofi Trademark Usage*

13.    The U.S. Patent and Trademark Office ("USPTO") has issued several registrations for marks used with over the counter consumer health products (hereinafter, the "Allegra Marks"). The Allegra Marks include, but are not limited to:

| Mark | Registration Number | Registration Date |
| --- | --- | --- |
|  |  |  |

| ALLEGRA | 6,214,890 | Dec. 6, 2020 |
|---------|-----------|--------------|
| ALLEGRA | 5,325,748 | Oct. 31, 2017 |
| ALLEGRA | 5,325,746 | Jan. 30, 2017 |
| ALLEGRA 24 HOUR | 4,136,435 | May 1, 2012 |
| ALLEGRA | 4,050,384 | Nov. 1, 2011 |
| ALLEGRA | 2,067,728 | Jun. 3, 1997 |

14.     The Allegra Marks have been in continuous use since at least their respective dates of registration.

15.     Sanofi advertises, distributes, and sells its Allegra Products to consumers under the Allegra Marks.

16.     Sanofi has also acquired common law rights in the use of the Allegra Marks through the United States.

17.     The federal trademark registrations for the Allegra Marks were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of the validity of the Allegra Marks.

18.     Sanofi has invested a substantial amount of money and has expended significant time and effort in advertising, promoting, and developing the Allegra Marks throughout the United States and the world.  As a result of such advertising and promotion, Sanofi has established substantial goodwill and widespread recognition in the Allegra Marks, and the marks have become

famous and associated exclusively with Sanofi and its products by both customers and potential customers, as well as the general public at large.

19.    To create and maintain such goodwill among its customers, Sanofi has taken substantial steps to ensure that products bearing the Allegra Marks are of the highest quality.  As a result, the Allegra Marks have become widely known and are recognized throughout the United States and the world as symbols of high quality products.

20.    As a result of, *inter alia*, the care and skill exercised by Sanofi in the conduct of its business, the high quality of the goods sold under the Allegra Marks, and the extensive advertising, sale, and promotion by Sanofi of its products, the Allegra Marks have acquired secondary meaning in the United States and the world, including this District.

21.    Sanofi is not affiliated with Defendant, and Defendant is not authorized to use the Allegra Marks.

***Allegra Products***

22.    Sanofi is recognized throughout New Jersey, the United States, and the world as a leading manufacturer of over the counter consumer health products. Sanofi strives to build a healthier future by helping people, help themselves. Sanofi empowers people to champion better self-care for themselves, their communities and the planet, through their consumer inspired science-based products and solutions. Through the Sanofi brands, Sanofi elevates creativity and makes health as simple as it should be, helping more people play an active role in their health.

23.    Sanofi develops, manufactures, and sells a vast portfolio of healthcare solutions around the globe from prescriptions medicines and consumer health products to vaccines and medical devises. Sanofi is obliged to meet legal and regulatory requirements to the safety of products through their entire life cycle, from research to end use, and also aim to protect patient

health by monitoring the safety of its medicines and constantly assessing the benefits/risk profile of its products.

24.     Moreover, Sanofi is committed to safeguarding the integrity and traceability of its products as a partner in the global fight against medical products that deliberately or fraudulently misrepresent their identity, composition or source ("falsified medicine"). To assist in this fight, in 2008, Sanofi created its Central Anti-Counterfeiting Laboratory.

25.     Allegra Products go through rigorous testing and quality control in order to protect consumers. This ensures that the products consumers receive are authentic, contain active ingredients, correct dosages, and do not include dangerous additives.

26.     To safeguard consumers, Sanofi includes safety seals, batch numbers, and expiration dates on its products.

### Defendant's Infringing and Improper Conduct

27.     Sanofi has never authorized or otherwise granted Defendant permission to sell Allegra Products.

28.     Despite this, Defendant has sold and/or continues to offer for sale the Allegra Products on various online commerce sites including, but not limited to, Amazon.com using the seller name Consensus Holdings.

29.     Defendant offers for sale and sells non-genuine Allegra Products on the Internet using the Allegra Marks.

30.     Defendant's advertisement of Allegra Products and use of the Allegra Marks provide customers with a false assurance that the products they have purchased are authentic and conform with Sanofi's high standards, contain active ingredients, and most importantly, are safe.

31.     The Allegra Products Defendant actually sells and delivers to consumers are not genuine. The sale of these non-genuine, counterfeit products to consumers poses grave health and safety risks.

32.     In addition to harm to consumers, the sale of counterfeit Allegra Products directly harms Sanofi in many ways. Counterfeit Allegra Products that do not help relieve consumers' ailments degrade and create a false impression that Allegra Products are unreliable, thereby tarnishing Sanofi's reputation and causing Sanofi to lose control of its goodwill and suffer lost sales and future business opportunities.

33.     When consumers purchase Sanofi brand products that are counterfeit, their image of Sanofi is diminished and Sanofi's opportunity to sell genuine, high-quality products to those consumers may be lost forever. As a result of the manufacture and distribution of such counterfeit products, Sanofi suffers substantial and irreparable harm to its brand, image, business, and goodwill with the public.

34.     Sanofi also suffers lost sales when customers purchase counterfeit products instead of genuine Allegra Products. Counterfeit goods directly harm, and unfairly compete against, Sanofi and its retail partners who sell and distribute genuine goods, resulting in lost profits.

35.     The Allegra Product, Allegra Allergy 24 hour, when purchased from Sanofi or an Authorized Reseller contains a safety seal, identifying batch numbers located on the box and bottle, which match, and expiration dates on the box and bottle, which match. These product attributes are for ensuring the quality of the product and to protect the consumer.

36.     On November 9, 2022, Defendant advertised and sold non-genuine Allegra Product, Allegra Allergy 24 hours 180mg tablets (the "Infringing Product"), to a consumer:



37.    Upon receipt, the consumer discovered that the safety foil seal on the Infringing

Product was punctured and open.





38.    Upon receipt of the Infringing Product by the consumer, the consumer contacted Sanofi to complain of the issue.

39.    Sanofi obtained the Infringing Product and evaluated the Infringing Product's traceability, packaging elements, and drug product.

40.    Allegra Products contain unique batch numbers that are printed on both the exterior carton and the bottle.

41.    Allegra Products also contain expiration dates that are printed on both the exterior carton and the bottle.

42.    Genuine Allegra Allergy 24 hour 180mg tablets are oval in shape and contain engravings on both sides.

43.    Sanofi's examination of the Infringing Product confirmed that the batch number on the exterior carton, 22D270T, did not match the batch number printed on the bottle label 22B248T. The expiration dates differed as well; with July 2024 printed on the bottle label, and the exterior carton having "09/24" printed on the side:





44.    As for the Infringing Product tablets contained within the non-conforming packaging, these were also non-conforming.  Specifically, the tablets were larger in size, differed in shape, and did not have any engravings on them.



| Genuine Allegra 180mg Tablet | Infringing Product |
| --- | --- |
| | |

45.     Upon testing the Infringing Product, Sanofi confirmed that the Infringing Product pills were not genuine. The active ingredient in Allegra Products is fexofenadine hydrochloride ("Fexofenadine HCl"). The analytical test (the "Test") concluded that the Infringing Product was negative for Fexofenadine HCl. The Test was performed to detect whether there was Fexofenadine HCl contained in the product and not whether there were adulterants.  Counterfeit pills such as the Infringing Product may contain lethal amounts of fentanyl, methamphetamine, or other substances known to threaten consumers' health and safety.  Furthermore, the DEA has found that counterfeit pills are produced for the U.S. market by international and domestic drug trafficking organizations. *See* Dept. of Just. & Drug Enf't Admin., Drug Fact Sheet, https://www.dea.gov/sites/default/files/2021-05/Counterfeit%20Pills%20fact%20SHEET-5-13-21-FINAL.pdf

46.     Accordingly, Defendant sold non-genuine, counterfeit Allegra Products using the Allegra Marks.

***Likelihood of Confusion and Injury Caused by Defendant's Actions***

47.     It would be difficult to overstate the importance that the assured quality of Sanofi's products has for consumers. Consumers purchase Sanofi products, and more specifically the Allegra brand, for the sole purpose of ingesting the over the counter drug to treat and prevent symptoms of allergies like itchy eyes, sneezing, and hives. Consumers rely on the Sanofi name and the active ingredients, identified on the bottle, to ensure that they are consuming a product that contains the ingredients advertised and does not contain any unknown additives, which a consumer can be physically harmed by.

48.     The harm being caused by the Defendant in this case is not theoretical. Consumers have complained about Defendant's sale of counterfeit products. Specifically. On November 14,

2022 at 11:45AM, a consumer contacted Sanofi to complain of the Infringing Product. This consumer stated that "she received one of [Sanofi's] products in the mail last week and it's a bottle of Allegra medicine however the foil was already off, open, and broken and she wanted her money back."

49.     Defendant's actions cause—and have caused—consumer confusion and disappointment regarding Sanofi sponsorship or approval of those products.

50.     Defendant's conduct results in consumer confusion as well as the dilution of Sanofi's goodwill and trade name.

51.     Defendant substantially harms consumers and Sanofi by placing non-genuine, counterfeit Allegra Products into the stream of commerce in the United States.

52.     The sale of Allegra Products by Defendant interferes with Sanofi's ability to control the quality of Allegra Products sold to consumers.

53.     Defendant's conduct results in the lessening of sales of authorized and properly advertised Allegra Products to the detriment of Sanofi.

54.     As a result of Defendant's actions, Sanofi is suffering the loss of substantial goodwill and widespread recognition in the Sanofi brands and Allegra Products.

55.     Defendant can continue to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to Sanofi's irreparable harm.

### COUNT I
### Federal Trademark Infringement
### In Violation of 15 U.S.C. § 1114

56.     Sanofi incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

57.     The Allegra Marks and the goodwill of the business associated with them are tremendously valuable in the United States and worldwide because they are distinctive and universally associated in the public perception with the highest quality over the counter consumer health products.

58.     Defendant has sold, offered to sell, distributed, and advertised infringing products bearing Allegra Marks ("Infringing Products").

59.     The differences between Defendant's Infringing Products and genuine Allegra Products are material.

60.     Defendant's actions have caused confusion, mistake, and deception as to the origin and quality of Defendant's Infringing Products because they are intentionally calculated to mislead consumers into believing that Defendant's Infringing Products originated from, are associated with, or are otherwise authorized by Sanofi, when in fact they are not.

61.     Upon information and belief, Defendant's infringing actions were committed fraudulently, willfully, and in bad faith, with knowledge of Sanofi's exclusive rights to, and goodwill in, the Allegra Marks, or with willful blindness to the same, and with the intent to cause confusion, to cause mistake, and/or to deceive.

62.     Defendant's unauthorized use of the Allegra Marks constitutes trademark infringement of the federally registered Allegra Marks and has caused substantial damage to Sanofi and to the reputation and goodwill symbolized by the Allegra Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, in an amount to be proven at trial.

63.     Defendant's conduct described above, including the unauthorized use of the Allegra Marks in interstate commerce, has directly and proximately caused substantial, irreparable

injury to Sanofi and to the business and goodwill represented by the Allegra Marks, which leaves Sanofi without an adequate remedy at law

## COUNT II
### Federal Trademark Counterfeiting
### In Violation of 15 U.S.C. § 1114

64.    Sanofi incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

65.    The Allegra Marks are valid, protectable trademarks that have been registered as marks on the principal register in the USPTO. Sanofi is the owner and registrant of the Allegra Marks.

66.    As described in more detail above, Defendant has used and counterfeited the Allegra Marks in connection with the marketing, promotion, and sale of their goods and services without Sanofi's consent, in a manner that is likely to cause, and has actually caused, confusion and/or mistake, or that has deceived members of the consuming public. Indeed, Defendant's counterfeiting and infringing activities are likely to cause and are actually causing confusion, mistake and deception among the consuming public as to the origin, sponsorship, and quality of Defendant's infringing products.

67.    Defendant has publicly advertised, sold, offered to sell, and distributed counterfeit Allegra Products in interstate commerce in direct competition with Sanofi and without authorization or consent to use the Allegra marks but with full knowledge of Sanofi's notorious prior rights in those marks.

68.    Defendant's counterfeit Allegra Products reproduce, counterfeit, copy, and colorably imitate the Allegra Marks or display a spurious designation that is identical with or substantially indistinguishable from, the Allegra Marks. Defendant has applied their

reproductions, counterfeits, copies, and colorable imitations of the Allegra Marks on packages intended to be used in commerce upon or in connection with the sale, offering for sale, distribution or advertising of Defendant's counterfeit products, which is likely to cause confusion, to cause mistake, or to deceive.

69.     Defendant's unauthorized use of the Allegra Marks on or in connection with Defendant's counterfeit products was conducted intentionally and with notice and full knowledge that the use was unauthorized by Sanofi. Accordingly, Defendant's actions constitute willful trademark infringement and counterfeiting of the Allegra Marks in violation of 15 U.S.C. §§ 1114 and 1117.

70.     Sanofi has been, and will continue to be, damaged by Defendant's infringement, including by suffering irreparable harm through the diminution of trust and goodwill among Sanofi consumers. Sanofi is entitled to an injunction against Defendant, and an order of destruction of all infringing products, as well as all monetary relief and other remedies available under the Lanham Act, including but not limited to trebled damages and/or actual profits, reasonable attorneys' fees, costs and prejudgment interest and/or statutory damages.

<u>**COUNT III**</u>
**False Designation of Origin**
**in Violation of 15 U.S.C. § 1125**

71.     The Allegra Marks have been, and will continue to be, known throughout the United States as identifying and distinguishing Sanofi's products and services.

72.     Sanofi engages in interstate activities designed to promote its goods and services sold, as well as the goodwill associated with the Allegra Marks, throughout the United States.

73.     By advertising or promoting products using the Allegra Marks as alleged herein, Defendant is misrepresenting the nature, characteristics, and qualities of its goods and services in violation of 15 U.S.C. § 1125.

74.     Defendant has made and distributed, in interstate commerce and in this District, product listings and advertisements that falsely designate the origin of Defendant's goods and services, falsely represent sponsorship by, affiliation with, or connection to Sanofi and its goods and services, and/or falsely represent the nature, qualities, and characteristics of the Allegra Products sold by Defendant in violation of 15 U.S.C. § 1125,

75.     Defendant's advertisement and sale of Allegra Products as alleged herein constitutes the use in interstate commerce of a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, in connection with the sale, or offering for sale, of goods in violation of 15 U.S.C. § 1125.

76.     Defendant's advertisement and sale of Allegra Products as alleged herein intentionally misrepresents the nature, characteristics, qualities, or geographic origin of Defendant's goods and services. Specifically, Defendant's unauthorized advertisement and sale of Allegra Products intentionally misrepresents to consumers that Defendant's Allegra Products are genuine products which have gone through the same rigorous quality control testing and channels and are authentic and safe.

77.     Defendant's advertisement and sale of Allegra Products as alleged herein creates a false description and false designation of origin in violation of 15 U.S.C. § 1125, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and public deception in the marketplace, and injury to Sanofi's goodwill and reputation in the Sanofi brands and Allegra Products, for which Sanofi has no adequate remedy at law.

78.     Defendant's advertisement and sale of Allegra Products to mislead and deceive consumers into believing that the Allegra Products sold by Defendant are authentic demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with the Sanofi brands and Allegra Products, thereby causing immediate, substantial, and irreparable injury to Sanofi.

79.     As a direct and proximate result of Defendant's actions, Sanofi has been, and continues to be, damaged by Defendant's activities and conduct. Defendant has profited thereby, and, unless its conduct is enjoined, Sanofi's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, Sanofi is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

80.     Sanofi is entitled to a judgment of three times its damages and Defendant's ill- gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

81.     Sanofi is entitled to a disgorgement of Defendant's profits received due to its conduct described herein pursuant to 15 U.S.C. § 1117.

## <u>COUNT IV</u>
### Deceptive Trade Practices Under State Law
### (N.J.S.A. §§ 56:8-1, et seq.)

82.     Sanofi hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83.     By advertising or promoting products using the Allegra Marks as alleged herein, Defendant has used or employed unconscionable commercial practices, deception, false pretenses, false promises, and misrepresentations in the sale of Allegra Products to consumers.

84.     As detailed above, Defendant's acts have caused a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of the Allegra Products that Defendant sells to consumers.

85.     Defendant's acts have caused Sanofi damage, have irreparably harmed Sanofi and, unless enjoined, will continue to do so in a manner affording Sanofi no adequate remedy at law.

## RELIEF REQUESTED

**WHEREFORE**, Sanofi prays for judgment in its favor and against Defendant providing the following relief:

1.     For an entry of judgment in favor of Sanofi and against Defendant on each of Defendant's claims for relief alleged in this Complaint;

2.     For a preliminary and permanent injunction restraining Defendant, its officers, agents, servants, employees, attorneys, and any other persons or entities acting in concert or participation with Defendant, including but not limited to any online platform or any other website, website host, website administrator, domain registrar, or internet service provider from:

      a.     Importing, exporting, assisting in the importation or exportation, manufacturing, procuring, distributing, shipping, retailing, offering for sale, marketing, advertising, or trafficking in any products not authorized by Sanofi and bearing the unauthorized simulations, reproductions, counterfeits, copies, or colorable imitations of the Allegra Marks which are likely to cause confusion, or bearing a design that is of a substantially similar appearance to the Allegra Marks listed in this Complaint;

      b.     falsely advertising the condition of any Allegra Products that it can legally sell;

c.      acquiring, or taking any steps to acquire, any Allegra Products that leads to a violation of the Lanham Act;

d.      selling, or taking any steps to sell, any Allegra Products in violation of the Lanham Act;

e.      engaging in any activity constituting unfair competition with Sanofi; and

f.      inducing, assisting, or abetting any other person or entity in engaging in or performing any of the business activities described in the paragraphs above.

3.      For a determination that Defendant's acts of trademark infringement constitute cases of willful and exceptional infringement;

4.      Award Sanofi statutory damages of $2,000,000 per counterfeit mark per each good sold, offered for sale, or distributed by Defendant pursuant to 15 U.S.C. § 1117(c);

5.      Award Sanofi its damages suffered as a result of Defendant's acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117;

6.      Award Sanofi Defendant's profits as a result of Defendant's acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117;

7.      Award Sanofi its reasonable attorneys' fees in bringing this action as allowed by law;

8.      Award Sanofi pre-judgment and post-judgment interest in the maximum amount allowed under the law;

9.      Award Sanofi the costs incurred in bringing this action; and

10.     Grant Sanofi such other relief as this Court deems just and proper.

Dated:  January 16, 2024                    Respectfully submitted,

                                  By:   */s/  Benjamin I. Rubinstein*
                                        Benjamin I. Rubinstein
                                        Benjamin.Rubinstein@klgates.com
                                        Molly K. Moran
                                        Molly.Moran@klgates.com
                                        **K&L Gates LLP**
                                        One Newark Center, 10th Fl.
                                        Newark, NJ 07102
                                        P: 973-848-4000
                                        F: 973-848-4001

                                        And

                                        Morgan  T.  Nickerson  (*pro  hac  vice*
                                        application forthcoming)
                                        Christopher  S.  Finnerty  (*pro  hac  vice*
                                        application forthcoming)
                                        K&L Gates LLP
                                        1 Congress Street
                                        Boston, MA 02111
                                        P: 617-261-3100
                                        F: 617-261-3175

                                        *Attorneys  for  Plaintiffs  AVENTISUB  LLC,*
                                        *CHATTEM,  INC.,  and  SANOFI-AVENTIS*
                                        *US LLC*

## REQUEST FOR TRIAL BY JURY

Plaintiffs hereby request a trial by jury on all counts so triable.

Dated: January 16, 2024

            */s/ Benjamin I. Rubinstein*
            Benjamin I. Rubinstein
            Benjamin.Rubinstein@klgates.com
            Molly K. Moran
            Molly.Moran@klgates.com
            **K&L Gates LLP**
            One Newark Center, 10th Fl.
            Newark, NJ 07102
            P: 973-848-4000
            F: 973-848-4001

            And

            Morgan T. Nickerson (*pro hac vice* application forthcoming)
            Christopher S. Finnerty (*pro hac vice* application forthcoming)
            K&L Gates LLP
            1 Congress Street
            Boston, MA 02111
            P: 617-261-3100
            F: 617-261-3175

            *Attorneys for Plaintiffs AVENTISUB LLC, CHATTEM, INC., and SANOFI-AVENTIS US LLC*